FARRELL, Respondent, *v.* GOLD FLINT MINING COM-
PANY, Appellant.

(No. 2,093.)

(Submitted March 25, 1905.   Decided May 8, 1905.)

*Mining Corporations—Money Advanced—Liability—Evidence*
*—Admissibility — Security — Directors — Powers—Work*
*and Labor—Claim—Bona Fide Holder.*

Mining Corporations—Money Advanced by Employee—Recovery.
1.  In an action against a mining corporation to recover money
alleged to have been advanced by plaintiff, general manager of the
company, in payment of services of certain employees of defendant,
testimony of plaintiff that he turned over certain concentrates to the
secretary of the defendant, and that he advanced the money with the
understanding that he should be reimbursed therefor from the pro-
ceeds of the concentrates, conclusively limited his recovery to the
amount realized from the sale of such concentrates.

Mining Corporations—Money Advanced—Recovery—Evidence.
2.  In an action against a mining corporation to recover money alleged
to have been advanced by him, as general manager of the company,
in payment of services of certain employees of defendant, with the
understanding that he be reimbursed from the proceeds of certain
concentrates turned over to the secretary of the corporation, plain-
tiff was not entitled to recover in the absence of evidence showing
that the concentrates were sold and a sum sufficient to reimburse him
received therefrom.

Mining Corporations—Powers of Secretary.
3.  The secretary of a mining company, who is not a member of the
board of directors nor the agent of the corporation, has no authority
to act for it beyond that given him as such secretary.

Mining Corporations—Liability—Directors—Evidence.
4.  Evidence that three directors of a mining corporation acknowl-
edged the justness of a claim against the corporation, and agreed
that it should be paid, in the absence of proof that they constituted
a majority of the board, or that they acted otherwise than in their
individual capacity, does ·not establish an obligation against the cor-
poration.

Corporation Acts Through Board of Directors.
5.  A corporation acts through its board of directors as an entity,
and not through the individuals who compose such board.

Mining Corporations—Money Advanced—Liability—Cross-examination.
6.  In an action against a mining corporation to recover money al-
leged to have been advanced by plaintiff as general manager, in pay-
ment of services of certain employees of defendant, a written contract
between the plaintiff and defendant, providing that the plaintiff
should at no time during the continuance of the agreement incur any
indebtedness in excess of the value of the result of the operations

which should create any liability against the company, and limiting plaintiff's compensation to twenty per cent of the net proceeds of the mining operations, was admissible as part of the cross-examination of the plaintiff.

Mining Corporations—Work and Labor Claim—*Bona Fide* Holder.

7.   One who took a claim against a mining corporation for labor performed while he was manager of the property with knowledge that he had no authority to incur any expense beyond the value of the proceeds of the mining operations, is not entitled to recover thereon in the absence of evidence showing that there were sufficient products of his mining operations on hand to pay the claim; nor is he a *bona fide* purchaser for value, having taken the claim with full knowledge of the limitation of his authority to incur expense.

*Appeal from District Court, Flathead County; D. F. Smith, Judge.*

ACTION by J. D. Farrell against the Gold Flint Mining Company.   From an order granting a new trial, defendant appeals.   Reversed.

*Messrs. Foot & Pomeroy,* for Appellant.

*Messrs. Noffsinger & Folsom,* for Respondent.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was commenced in September, 1899, by the filing of a complaint containing two causes of action. The first is for the recovery of $425.25, alleged to have been furnished by the plaintiff, Farrell, to the defendant company, and which amount the company promised to repay, but failed and neglected to do so. The second cause of action is for the recovery of $20. It is alleged that the defendant company was indebted to one Lepper in the sum of $20 as a balance for wages for work performed by Lepper for the company, and that Lepper sold and assigned his claim to this plaintiff, and that the same has never been paid. The answer is a general denial of all the material allegations of the complaint.

The court instructed the jury orally to the effect, that under the contract in evidence the plaintiff could not create any indebtedness against the defendant company in excess of the value of the concentrates on hand; and, further, that any agree-

ment on the part of the company to repay the plaintiff would have to be done by a vote of the board of directors at a meeting called for that purpose. The court then submitted to the jury two questions for its determination: First, did the plaintiff furnish to the defendant the money in question mentioned in the first cause of action? And second, did the company authorize its secretary to execute the duebill or writing showing an indebtedness on the part of the defendant company to Farrell? The court then reiterated this statement in the following language: "I think I have made the issues sufficiently plain that, if the plaintiff furnished the defendant any money, as alleged, the defendant was not bound to pay in excess of the value of the concentrates then on hand, nor, in any event, unless the board of directors of the company had authorized it, through its secretary, or in any other way, to pay the amount." The jury returned a verdict in favor of the defendant company, and upon motion of the plaintiff the court granted a new trial, from which order this appeal is prosecuted.

The only evidence offered on behalf of the plaintiff was the testimony of the plaintiff himself, given by deposition. He testified that he was employed by the defendant company as its general manager to operate its mine and mill in Flathead county; that the contract for his employment was made in 1898, and in a general way he told of his operations of the company's property during July and August of that year; that in such operations he employed Moffett as mill foreman, Gillis as mine foreman, and Lepper as a laborer; that the operations at the end of July were unsatisfactory, and at the close of August the plaintiff and his foremen had satisfied themselves that the property could not be operated at a profit. The plaintiff made this report to the company, and filed with the company his resignation on September 14, 1898, as provided in his contract of employment. On September 15, 1898, he met with the board of directors of the company at Spokane, and it was then determined that operations under his management should cease, and the services of Moffett and Gillis be dispensed with.

He testified that at that time there were certain concentrates on hand at the mill, and the value of these was estimated, and it was thought that, after paying outstanding claims for labor, material, etc., there would still be a small balance due the plaintiff, but this he agreed to contribute to the company, as the operations had been disappointing; that Mr. Daigler, the secretary of the company, took over the accounts and certified to their correctness.   Under the terms of his employment the plaintiff was entitled to handle the mine products.   He further testified: "I turned over the concentrates on hand to Mr. Daigler, with the understanding that he would pay the accounts which had been submitted to him and acknowledged as correct from the proceeds of the shipments."   He testified that there was then due Moffett and Gillis, over and above the amount of money which the company had on hand, $425.20; that these men demanded their pay, and, as the company had no funds, and was without responsibility, the plaintiff advanced the sum named above, with the understanding that he was to be reimbursed from the proceeds of the sale of the concentrates.   He further testified that a statement showing the amount due Moffett and Gillis and its payment by plaintiff was then made out, and certified by the secretary, and given to the plaintiff, which was introduced in evidence, and is as follows:

"Gold Flint Mining Co., to J. D. Farrell, Dr.
    To amount paid T. J. Moffett in full to date. $274.52
    To amount paid J. Gillis in full to date.... 182.52

                                             $457.04
    Less amt. in bank per financial statement.. 31.84

                                           $425.20"

"Spokane, Wash., Sept. 15th, 1898.
"The above is correct as per statement rendered by J. D. Farrell.                    "GOLD FLINT MINING CO.,
                "L. E. DAIGLER, Secty."

The plaintiff further testified: "I repeatedly wrote Mr. Daigler requesting remittance of the amount advanced by me, and was later informed that the proceeds from the sale of the concentrates were not sufficient to meet the indebtedness; that in fact some amounts were still due other creditors, and that there were no funds to reimburse me." The plaintiff reiterates the statement of the agreement under which he advanced the money to pay Moffett and Gillis as follows: "I furnished the money to pay Moffett and Gillis upon the demand of these men, and by agreement with Mr. Daigler. The company was to reimburse me for the payment of this money from the proceeds of the sale of the concentrates." He further testified: "Since this money has been advanced, Messrs. Voorhees, Merrin, and Irwin have admitted to me the correctness of this account, and that it should be paid, and they are directors of the company."

Upon the cross-examination of this witness there was introduced in evidence, over the objection of the plaintiff, the written contract of his employment as general manager of the defendant company. Among other things, that contract provides that the operating expenses, the transportation and treatment charges of ores, and the ordinary repairs should be paid from the gross proceeds of the mining operations, and the balance should be divided as follows: twenty per cent to the plaintiff, Farrell, and eighty per cent to the defendant company. The twenty per cent to be paid to the plaintiff was to be in full compensation for his services as manager of the property. The contract contains this further provision: "It is further understood and agreed by and between said parties, that said party of the second part [Farrell] shall at no time during the continuance of this agreement, incur any indebtedness in excess of the value of the result of the operations, which shall create any liability whatever against said party of the first part [the company]." Under the contract the plaintiff was given absolute authority to direct the operation of the business of the property and to handle the proceeds of the mining operations.

On behalf of the defendant evidence was introduced tending to show that the concentrates on hand on the 15th of September were disposed of, and the proceeds, which were very small, applied to the payment of the accounts turned over by Farrell to the company. The witness Merrin, one of the directors of the company, testified that his understanding of the agreement was that any funds from the sale of the concentrates left over and above after paying the labor and material accounts would go to the plaintiff in repayment of the amount advanced by him to Moffett and Gillis; but this witness says that he does not remember that there was any balance after the other claims were paid. He further testified with reference to plaintiff's Exhibit "A," above, that no authority whatever was given to Mr. Daigler to sign that paper, and that Daigler was not a member of the board of directors.

As to the second cause of action plaintiff testified that he had employed Lepper from July 16th to September 15th; that at that time there was a balance due to Lepper of $71.75; that on September 21st he advanced to Lepper $20; that the company afterward paid to Lepper the balance of the account; that he took an assignment of the claim for the $20 advanced by him. An effort was made to show the character of work performed by Lepper and the value of his services, but this evidence was excluded. Plaintiff then sought to show the written assignment of the Lepper claim to him, but upon objection this evidence was also excluded. However, the plaintiff does testify that he became the owner of the claim on September 21st. There was, however, no identification or attempted identification of the signature of Lepper to the assignment, and at the close of the testimony the court, of its own motion, struck out all the testimony respecting this second cause of action.

The motion for a new trial was made upon a statement of the case, which specified as the errors relied upon (1) the insufficiency of the evidence to justify the verdict, and (2) errors of law occurring at the trial. The particular errors of law

specified are to the rulings of the court in excluding testimony as to the value of Lepper's services, as to the character of those services, as to the present ownership of the Lepper claim, the exclusion from the consideration of the jury of Lepper's bill, the assignment of the same to plaintiff, and Lepper's receipt for $20 paid by the plaintiff to him, the ruling of the court in admitting in evidence the contract between plaintiff and defendant, the action of the court in withdrawing from the jury's consideration all the evidence respecting Lepper's claim, and the errors of the court in its instructions to the jury.

Respondent contends that from the instructions it is apparent that the trial court misapprehended the character of the action, and considered it as one upon the contract, whereas the action is for money paid out for the use and benefit of the defendant company, and, as far as the evidence shows, paid out after the contract had ceased to have any binding force or effect, as it was after the plaintiff had presented his resignation to the defendant company. However this may be, the court was right in saying to the jury that the plaintiff could not recover beyond the amount realized from the sale of the concentrates, and could not recover in any event unless the promise to pay him was made by the defendant company, acting through its board of directors. The evidence on behalf of the plaintiff himself is conclusive as to the first proposition. He says that he turned the concentrates over to Mr. Daigler, and that he advanced the money to Moffett and Gillis with the understanding that he should be reimbursed therefor from the proceeds of the sale of the concentrates. It then became incumbent upon him to show that the concentrates were sold, and a sum sufficient to reimburse him received therefrom; and upon this there is no evidence whatever in the record. In the second place, he says this agreement was made with Mr. Daigler. It appears that Daigler was the secretary of the corporation, but not a member of the board of directors, and, so far as this record shows, was not the agent of the company, nor had any authority to act for the company, beyond the authority given

him as such secretary. So far as this record shows, then, the agreement was made by the plaintiff with Daigler, and not with the corporation at all. He testified that members of the board of directors acknowledged the justness of his claim, and agreed that it should be paid; but whether these directors— Voorhees, Merrin and Irwin—constituted a majority or only a minority of the board is not apparent. In any event, a corporation acts through its board of trustees as an entity, and not through the individuals who may happen to compose such board. The case of *Clarkson* v. *Kennett,* 17 Mont. 563, 44 Pac. 88, is not in point. In the opinion in that case it is said that the record shows that the money was advanced upon the express orders and requests of the defendant.

Under this view of the case, we think the court was in error in granting the plaintiff a new trial as to the first cause of action; for under this view the plaintiff cannot recover as against the defendant company in any event, and therefore the error in the first part of the instructions, if error, was harmless. There was no error in admitting in evidence the contract between plaintiff and the defendant company. It was properly a part of the cross-examination of the plaintiff.

As to the second cause of action: It appears that the Lepper claim was for services performed by Lepper as an employee of the defendant company, employed by and working under the directions of plaintiff, Farrell. At the time Farrell took the assignment of this claim, in September, 1898, he did so knowing that under his contract of employment he had no authority whatever to bind the corporation for any amount beyond the proceeds of the mining operations. It was therefore incumbent upon him to show that when he took the assignment of this claim there were concentrates or other products of his mining operations on hand sufficient to pay this claim. As he made no effort to show this fact, we are of the opinion that the court properly withdrew all testimony concerning it from the consideration of the jury. It may be said that at the meeting of September 15, 1898, the value of the concentrates on hand

was estimated, and according to that estimate there was suffi-: cient to pay off all claims against the company. But, on the other hand, the evidence of director Merrin on behalf of the defendant is that these concentrates were left at the mill; that when the mining operations ceased, and there was no in-. going freight, the freight rates on the concentrates out were so greatly increased as to consume a very large portion of the value of the concentrates as estimated. And if it be said that, as against the company, Lepper could assert his claim, or that any *bona fide* holder thereof could likewise assert the same as against the company, it is sufficient answer to say that the plaintiff, Farrell, does not stand in the position of a *bona fide* purchaser for value, as he took the claim with full knowledge, that he had no authority whatever to incur any expense beyond the value of the proceeds of the mining operations. We find no error in the action of the court in excluding from the con-. sideration of the jury the evidence respecting this second cause of action. The court erred in granting a new trial, and the order to that effect is reversed.

*Reversed and remanded.*

Mr. Chief Justice Brantly and Mr. Justice Milburn concur.