AETNA CASUALTY & SURETY CO., Respondent, *v.* AMERICAN BREWING CO., Appellant.

(No. 4,767.)

(Submitted April 19, 1922. Decided May 26, 1922.)

[208 Pac. 921.]

*Contracts—Corporations—Powers of Secretary—False Certificate—Special Meetings—Estoppel—Suretyship.*

Corporations—Contracts—Powers of Secretary.
  1. The secretary of a corporation has not, by virtue of his office alone, authority to bind it by contract.
Same—False Certificate by Secretary—Liability of Principal.
  2. *Quaere:* May a corporation be held liable for injury resulting to a person from the issuance of a false certificate issued by its secretary, in view of section 5942, Revised Codes of 1921, providing that for such an act the officer himself shall respond in damages?
Same—Special Meetings—By-Laws—Power of Secretary—Unauthorized Certificate.
  3. Where the by-laws of a corporation provided that a special meeting of the board of directors could be called by the president or at his request by the secretary, the secretary and the third member of the board were without authority to call such a meeting, and a surety company which relied upon the certificate of the secretary that at the meeting he had been empowered to enter into a contract of indemnity in behalf of the corporation, did so at its peril.

Same—Special Meetings—Statutory Provisions—When not Controlling.
  4.   Under the express terms of section 5944, Revised Codes of 1921, the method therein provided for the calling of special meetings of the directors of a corporation, has no application where the by-laws declare how such meetings shall be called.

Same—Unauthorized Act of Secretary—Estoppel.
  5.   A corporation is not estopped to deny the authority of its secretary to enter into a contract in its behalf where the party seeking to hold it liable did not, in becoming a party to it, rely upon an alleged previous act of the same nature done by the secretary, or could not have relied upon it because done after the contract was made.

Same—Powers of President Owning Majority of Stock.
  6.   The president of a corporation who owns a majority of its stock, and the by-laws of which provide that his conduct in the direction of its affairs is subject to the advice of the board of directors, may, when such advice is not given, act upon his own judgment.

*Appeal from District Court, Cascade County; H. H. Ewing, Judge.*

Action by the Aetna Casualty & Surety Company against the American Brewing Company. Judgment for plaintiff and defendant appeals. Reversed, with directions to render judgment for defendant.

*Mr. John W. Stanton,* for Appellant, submitted a brief and argued the cause orally.

If it be contended that defendant is bound by the false minutes purporting to show the board of directors authorized the secretary to execute the bond in question, and if such minutes were true instead of false, the proceedings of such meeting would be illegal and void, and such bond would be void. If the majority of directors assembled by mutual consent and authorized the secretary to execute the indemnity bond, the proceedings of such meeting would be illegal and void, and such bond be void because the meeting was convened without notice, verbal or written, to the director who did not attend. It is a fact that the president was a director and did not attend. The rule is that "no power intrusted to a board of directors can be legally exercised without notice to all the members composing such board." The company was not incorporated to

issue indemnity bonds. Under Revised Codes, section 3848, the special meeting would have to be called on the order of the president. It cannot be contended that the president attended any meeting set forth in the sham minutes. Therefore, if the sham minutes were actually true the bond would be void. It would be void because the proceedings of the special meeting would be void and they would be void because no notice was given to the president.

*O'Rourke* v. *Grand Opera House Co.,* 47 Mont. 459, 133 Pac. 965, holds the object of the notice is to give the directors opportunity to be present. (See, also, *Smith* v. *Dorn,* 96 Cal. 73, 30 Pac. 1024.) *Curtin* v. *Salmon River Hydraulic Gold Min. & Ditch Co.,* 130 Cal. 345, 80 Am. St. Rep. 132, 62 Pac. 552, holds a mortgage void that was authorized at a special meeting of the board without notice to two directors who were absent from the meeting, the minutes not being approved at any subsequent meeting of the board, although it had been ratified by two-thirds of the stockholders.

The defendant had no power to execute an indemnity bond. Section 3889, Revised Codes of 1907, provides that corporations organized thereunder shall have power "to enter into any obligations or contracts essential to the transaction of its ordinary affairs or for the purposes of the corporation," and section 3890 declares that "no corporation shall possess or exercise any corporate powers, except such as are necessary to the exercise of the powers so enumerated and given." It was not essential to the transaction of the ordinary affairs of the defendant corporation that it should execute indemnity bonds. Defendant as a corporation has no power to guarantee the obligations of others. *Kellogg-Mackay Co.* v. *Havre Hotel Co.,* 199 Fed. 727, 118 C. C. A. 165, holds under these sections that a corporation has no authority to guarantee the obligations of others.

Estoppel. *Yellowstone County* v. *First etc. Sav. Bank,* 46 Mont. 439, 128 Pac. 596, holds that "to make the doctrine of estoppel *in pais* applicable, the party invoking it must show

that he was misled to his prejudice by the conduct of which he complains.'' The plaintiff was not misled to its prejudice,—indeed, no officer or director of defendant had any opportunity to know anything about the signing of the bond in question or any previous bonds at any time or to know anything about the careful plans that the plaintiff and its agent had laid to the detriment of the defendant. (*Scheffer* v. *Chicago etc. Ry. Co.,* 53 Mont. 302, 163 Pac. 565.)

*Mr. I. W. Church* and *Mr. Fletcher Maddox,* for Respondent, submitted a brief; *Mr. Maddox* argued the cause orally.

If the contract of indemnity was not authorized by a special meeting of the defendant's directors as shown by Exhibit ''N,''—if, in fact, no such meeting was held, it is too late for the defendant to avail itself of such irregularity even if the law would permit it to take advantage of its own deception, since the plaintiff accepted the certified copy of the minutes in good faith, and acted thereon by assuming a liability of $4,694. Defendant's argument proceeds upon the assumption that the articles of incorporation of defendant show that it was incor-porated only for the purpose of manufacturing and selling beer and malt liquors, and not for the purpose of executing indemnity bonds, and, therefore, the contract of indemnity whether authorized by the directors or not, is *ultra vires* and void. The selling of beer was one of the purposes of incorporation of the defendant brewing company. The maintaining of agencies or instrumentalities by which sales could be made was necessarily incidental to the power to sell. The business of defendant being to manufacture and sell beer, the giving of the indemnity contract was clearly assuming an obligation for the purposes of the corporation within the meaning of section 3889, Revised Codes.

Assuming for the moment that the execution of the indemnity contract was not within the corporate powers of the defendant we find the controlling law stated in 3 Thompson on Corporations, sec. 2778, as follows: ''The strict doctrine of

*ultra vires,* which renders void all contracts of corporations outside the scope of their granted powers, is qualified by the principle that it will not be given effect either for or against the corporation when it would defeat the ends of justice or work a legal wrong.'' This principle was applied in a case where a member, relying on the minutes of a corporation, contracted with it to perform certain services and make certain expenditures not knowing of any illegality in the meeting to which the minutes referred, and it was held that the corporation could not defend against an action for the services because the meeting of directors at which the resolution for employment was passed had not been regularly called. (See large collection of cases in footnote, and particularly the case of *Wyss-Thalman* v. *Beaver Valley Brewing Co.,* 219 Pa. St. 189, 68 Atl. 187.)

Plaintiff performed its agreement. It did what the defendant requested it to do, and as to this, it became an executed contract as to the plaintiff, and defendant is estopped to set up the defense that the contract was in excess of the power of the corporation which was a party to it. (3 Thompson on Corporations, sec. 2787; *Eastern Bldg. & Loan Assn.* v. *Williamson,* 189 U. S. 122, 47 L. Ed. 735, 23 Sup. Ct. Rep. 52 [see, also, Rose's U. S. Notes]; *Kadish* v. *Garden City E. L. & B. Assn.,* 151 Ill. 531, 42 Am. St. Rep. 256, 38 N. E. 236.)

MR. CHIEF COMMISSIONER POMEROY prepared the opinion for the court.

The plaintiff brought this action to recover on a contract of idemnity given it by defendant November 3, 1917, to secure the plaintiff, a bonding company, against liability on account of its furnishing Frank Nelson, a saloon-keeper, a bond to the United States, as a guaranty that Nelson would pay the liquor tax required by the act of Congress of October 3, 1917 (40 Stat. 300), within seven months from the date of the Act. Nelson defaulted, and the plaintiff paid the penalty of its bond. The indemnity contract was executed in the name of the defendant, by its secretary, W. W. Wheeler. The case

was tried to the court, and judgment rendered generally for the plaintiff. The appeal is from the judgment.

All the evidence is in the record in a bill of exceptions. Various assignments are made, but it will be necessary only to consider whether the evidence supports the judgment. The defendant contended at the trial, and contends here, that the secretary had no authority to execute the contract.

The secretary of a corporation has not, by virtue of his office [1] alone, the power to bind it by contract. (*Farrell* v. *Gold Flint Min. Co.*, 32 Mont. 416, 80 Pac. 1027; *Hopkins* v. *Paradise Heights F. G. Assn.*, 58 Mont. 404, 193 Pac. 389; 14A C. J. 94, 359; 2 Thompson on Corporations, sec. 1513; secs. 5931, 5933, 5938, 5994, Rev. Codes 1921.) Acting upon the [2] foregoing principle, the agent of the plaintiff, pursuant to instructions from the home office, caused to be prepared a call and waiver of notice of special meeting of directors, minutes of special meeting, and copy of resolution, with certificate of secretary, purporting to give the secretary authority to execute the indemnity contract and five other like contracts. These papers were presented to the secretary by plaintiff's agent, signed by the secretary, and delivered to the agent. The secretary also procured the signature of Mr. Baier. The directors of the defendant were George H. Stanton, John Baier and W. W. Wheeler. Mr. Stanton was president and Mr. Wheeler secretary. The agent of the plaintiff also delivered to Mr. Wheeler a typewritten copy of the minutes to paste in the record of the defendant. These documents, as delivered to the plaintiff's agent, are known in the record as Plaintiff's Exhibit "N," and are as follows:

"Call and Waiver of Notice of Special Meeting of Directors of American Brewing Company.

"We, the undersigned, being a majority of the directors of the American Brewing Company, do hereby call a special meeting of the directors of said company to be held in the city of Great Falls, Montana, at its principal office therein, Stanton Bank Building, on the 31st day of October, 1917, at two

o'clock P. M., for the purpose of authorizing the secretary of said company to execute contracts of indemnity relative to certain bonds required for additional taxes on certain articles held by dealers and jobbers pursuant to the Act of Congress approved October 3, 1917, and for the purpose of transacting any and all business pertaining to the affairs of said company.

"Dated October 31, 1917.

"[Signed]    JOHN BAIER.

"[Signed]    W. W. WHEELER.

"Minutes of the Special Meeting of the Directors of the American Brewing Company.

"A special meeting of the directors of the American Brewing Company was held in the city of Great Falls, Montana, on the 31st day of October, 1917, at two o'clock P. M., at its principal office therein, to-wit, Stanton Bank Building; a majority of the directors being present in person. The chairman thereupon stated that the meeting was called for the purpose of authorizing the secretary of said company to execute any and all contracts of indemnity in the matter of bonds for additional taxes on certain articles held by dealers and jobbers, which said taxes were imposed by the Act of Congress approved October 3, 1917. The following resolution was thereupon unanimously adopted:

"Whereas, said American Brewing Company is engaged in the wholesale and retail liquor business; and whereas, numerous customers of said American Brewing Company are indebted to said Brewing Company in various and sundry amounts; and whereas, it is necessary for said customers to furnish bonds for certain additional taxes, imposed by the Act of Congress approved October 3, 1917, which said bonds are required to be secured by certain contracts of indemnity to be executed by said American Brewing Company.

"Now, therefore, be it resolved, that Wayne W. Wheeler, secretary of said American Brewing Company, is hereby empowered and authorized to execute any and all contracts of indemnity in behalf of said American Brewing Company secur-

ing the payment of the additional taxes imposed by Act of Congress approved October 3, 1917, on certain articles held by dealers and jobbers.

"There being no further business before the meeting, same is adjourned.

"[Signed]   JOHN BAIER, Chairman.

"[Signed]   WAYNE W. WHEELER, Secretary.

"Certificate as to Resolution.

"Know all men by these presents, that the undersigned, secretary of the American Brewing Company, does hereby certify that the following resolution was duly adopted at a special meeting of the board of directors of said American Brewing Company on the 31st day of October, 1917:

"'Whereas, said American Brewing Company is engaged in the wholesale and retail liquor business; and whereas, numerous customers of the American Brewing Company are indebted to said Brewing Company in various and sundry amounts; and whereas, it is necessary for said customers to furnish bonds for certain additional taxes, as imposed by the Act of Congress approved October 3, 1917, which said bonds are required to be secured by certain contracts of indemnity to be executed by said American Brewing Company:

"'Now, therefore, be it resolved, that Wayne W. Wheeler, secretary of said American Brewing Company, is hereby empowered and authorized to execute any and all contracts of indemnity in behalf of said American Brewing Company securing the payment of the additional taxes imposed by Act of Congress approved October 3, 1917, on certain articles held by dealers and jobbers.'

"In witness whereof, I have hereunto affixed the corporate seal of the American Brewing Company.

"[Signed]   WAYNE W. WHEELER,

"Secretary.   [Seal.]

"Dated October 31, 1917."

No meeting of the directors was held, nor was any record of [3, 4] a meeting made. Mr. Stanton knew nothing about the

execution of any of the contracts until many months after the liability of the plaintiff on its bond to the government became fixed by the default of Nelson. Leaving undetermined the question whether, in view of section 5942, Revised Codes of 1921, a corporation is liable on account of the false certificate of the secretary, the plaintiff could not rely on the evidence of authority furnished, for the reason that, had a meeting of the directors been held, just as certified by the secretary, it would have been powerless to grant the necessary authority to that officer. The by-laws of the defendant did not authorize a meeting of the board of directors, except upon call of the president. Section 5944, Revised Codes of 1921, providing for the calling of special meetings of the directors of corporations, by its terms has no application to a corporation that provides by its by-laws for the calling of such meetings. The provision of the by-laws of the plaintiff on the subject was: "Special meetings of the board may be called by a notice in writing, to be given by the president, or, at his request, by the secretary, for such period of time as the president may elect. Personal service upon any stockholder or director may be effected by depositing a written or printed copy of such notice in the United States postoffice at Great Falls, Montana, under cover, postage prepaid, addressed to each stockholder or director, the length of time prior to the meeting thereby called as required by these by-laws, and the certificate of the president or of the secretary giving such notice shall be conclusive as to the fact of service."

It would have been a comparatively easy task for the agent of the plaintiff to have had a proper record, unless the president had refused to act. Under the provisions of section 5932, Revised Codes of 1921, the by-laws of a corporation are subject to inspection of the public during office hours. Section 6008 provides in detail as to how the record of a special meeting of the board shall be made.

The plaintiff contends that the defendant held out its secretary as having power to make indemnity contracts of

[5]

this character. It is true that the record shows that on November 2, 1916, Mr. Wheeler, as secretary for the defendant, without express authority, executed a bond to the government with the Aetna Accident & Liability Company, the predecessor of the plaintiff, as surety, for the payment of a tax required of defendant. The other transaction mentioned by plaintiff occurred long after the liability of plaintiff on the Nelson bond had become fixed, and could not have been relied upon by the plaintiff in accepting the Nelson indemnity contract executed by the secretary without authority. It may well be questioned whether the plaintiff would have been warranted in acting on a single precedent, a proposition not necessary to determine. The rule which plaintiff seeks to apply rests on the doctrine of estoppel *in pais*. (*Merchants' Bank* v. *State Bank,* 10 Wall. 604, 19 L. Ed. 1008 [see, also, Rose's U. S. Notes]; 14A C. J. 368.)

"It is an essential element of equitable estoppel that the person invoking it has been influenced by and has relied on the representation or conduct of the person sought to be estopped." (21 C. J. 1126; see, also, *Tatem* v. *Eglanol Min. Co.,* 45 Mont. 367, 123 Pac. 28; *Yellowstone County* v. *First etc. Sav. Bank,* 46 Mont. 439, 128 Pac. 596; *Mooney* v. *O. P. Mooney Co.,* 71 Wash. 258, 128 Pac. 225.)

But one conclusion can be reached from the evidence, that the plaintiff relied only on what purported to be the special authority given the secretary by a meeting of the board of directors of the defendant, as shown by Plaintiff's Exhibit "N." E. E. Givens, plaintiff's agent and local vice-president, the only witness in plaintiff's behalf, testified as follows: "Q. What did you look over the by-laws of the defendant for? A. To see if the secretary had power to sign an indemnity agreement. I concluded he did have. Before accepting the indemnity contracts, I had received instructions from my home office to procure authority from the officer executing them, when signed by a corporation. Q. What was the substance of those instructions? A. That we must require the corporation

giving the indemnity to give special authority to the person signing indemnity bonds. When I received those papers from Mr. Wheeler, I mailed them, with the indemnity contract, to the office of the general agents of the company—that is, Lozier & Walker, at Butte—and they mailed them to the Aetna Casualty & Surety Company at Hartford. That was done in compliance with instructions from the home office. After that I delivered the Nelson bond to the United States government. About these waivers and minutes and certificates prepared at the office of the plaintiff, I had received instructions from attorneys for plaintiff to see to it that certain minutes were prepared. These instructions came from the home office. I don't remember, but it is possible that I talked to my attorney about the kind of minutes to bind the American Brewing Company, as well as the Montana Company. I knew it was necessary to have some such steps taken as shown by said Exhibit 'N' to bind both companies, and in addition to that I was instructed about that.''

On cross-examination, Mr. Wheeler testified: ''There may have been a later conversation in which the question of my authority arose. Q. And in that later one, did not Mr. Givens insist that authority must be exposed or shown upon the minutes of the American Brewing Company by a meeting of the board of directors? A. Yes; he said in effect that under his authority from the Aetna Casualty and Surety Company he could not deliver the Nelson bond to the government without a meeting of the directors of the American Brewing Company being first held and giving me authority to sign the contract. It was after that he called for authority from the board of directors of the American Brewing Company. Just previous to my signing the contract of indemnity in the Nelson matter, Mr. Givens wanted some record shown in our minute-book as to my authority to execute the contract made at the time of bringing in those bonds. Mr. Givens brought three other papers you have been talking about. They were dated October

31, purporting to be minutes of a directors' meeting, and I signed that paper. Q. I will ask you to look at Plaintiff's Exhibit 'N,' and say if those were the papers which were signed at that time? A. That is correct. Q. Did you deliver these papers to Mr. Givens after the signatures were attached? A. That is my signature and the signature of John Baier. I had Mr. Baier sign the papers, and suppose Mr. Givens called and got them. Q. You delivered that record, the certificate, to Mr. Givens in compliance with his demand for authority for you to execute the contract of indemnity, didn't you? A. He brought those papers in, and I signed them. I signed them, because it was necessary to sign them to get the bond."

On redirect examination, Wheeler testified: "Mr. Givens brought Exhibit 'N' to our office. He had prepared them, or had them prepared, to satisfy himself, and brought them there for signature, and they were signed in my office on November 3, 1917."

Had the contract been signed by Mr. Stanton, the president and executive head of the defendant and the owner of more than sixty-five per cent.of its capital stock, without authority of the board or knowledge of the other directors; had he authorized the secretary to execute the contract, or had he even known that the contract was executed, a very different question would be presented. The by-laws of the defendant provided:

"Section 7. The board of directors shall at their first regular meeting elect one of their number to act as president, and if at any time the president shall be unable to act the vice-president shall take his place and perform his duties, and if the vice-president shall from any cause be unable to act, they shall appoint some other member of the board to do so, in whom shall be vested for the time being all the duties and functions of his office. It shall be the duty of the president, or, in his absence, the vice-president, or directors, appointed as above provided: (a) To preside over all meetings of share-

holders and directors and he shall have the privilege of casting a deciding vote. (b) To sign as president all certificates of stock and all contracts of the company. (c) He shall call the directors together whenever he deems it necessary, and shall have, subject to the advice of the directors, the direction of the affairs of the company, and generally shall discharge such other duties as may be required of him under the by-laws of the company. (d) It shall be the duty of the president and secretary to sign and execute all deeds, contracts or other instruments required to be in writing."

"Section 11. All meetings of the shareholders and of the directors, both regular and special, shall be held at the office of the company at Great Falls, Montana, or at such other convenient place in said city of Great Falls as may be designated in the notice of meeting."

"Section 13. Regular meetings of the board of directors shall be held immediately after the adjournment of each annual meeting of the stockholders. A majority of the board of directors shall constitute a quorum for the transaction of business. At all meetings of the board of directors all questions shall be decided by a majority of votes, but, in case of an equality of votes, the president shall have a second or deciding vote. The directors at the meeting held immediately after the adjournment of the annual meeting shall elect officers of the company."

Under these provisions the president had large powers. [6] True, his conduct in the direction of the affairs of the company was subject to the advice of the directors; but, when that was not given, he had power to act according to his own judgment. (*Cook* v. *American Tubing & Webbing Co.,* 28 R. I. 41, 9 L. R. A. (n. s.) 193, 65 Atl. 641.) As evidence of the direction of the president, Wheeler testified: "I have signed notes, checks and contracts for the company when authorized by Mr. Stanton." It is proper to mention that there is no evidence that the plaintiff had any knowledge of these acts on

the part of the secretary performed by direction of the president. The trial court should have rendered judgment for the defendant for its costs.

It is recommended that the judgment be reversed and the cause remanded, with directions to render judgment for defendant.

PER CURIAM: For the reasons given in the foregoing opinion, the judgment appealed from is reversed and the cause is remanded, with directions to render judgment for defendant.

Rehearing denied June 27, 1922.