GORDON CAMPBELL PETROLEUM CO., Respondent, *v.*
GORDON CAMPBELL-KEVIN SYNDICATE et al.,
Appellants.

(No. 5,835.)

(Submitted January 9, 1926.    Decided January 28, 1926.)

[242 Pac. 540.]

*Accounts Stated—Business Trusts—Board of Trustees must Act
as Unit — Ratification of Unlawful Act — Evidence — Insuffi-
ciency.*

Account Stated—Definition.
   1.   An account stated is a new contract arising out of an account
existing between the parties—an agreement that the' items of the
account and the balance struck are correct, with an agreement, ex-
press or implied, for the payment of such balance, the consideration
for the new contract being the settlement of the original account.

Business Trust—Board of Trustees must Act as a Unit in Disposing of
Business of Trust.
   2.   The trustees of a business trust constitute a board and can act
only as a unit in the disposition of any business of the trust which
requires the exercise of judgment or discretion, and not through the
individuals composing the board.

Same—Trustee cannot Vote on Approval of Own Claim Against Trust.
   . 3.   A trustee of a business trust cannot vote as such upon the
approval of a claim of his own against the trust; hence where only
two of the three trustees constituting the board were present at one
of its meetings when the individual claim of one of the two was
presented for allowance and an alleged account stated agreed upon,
the action was void for want of competent representation of the
trust.

Same—Ratification by Board of Unlawful Act of Trustees—Evidence—
Insufficiency.
   4.   Contention that the illegal action of two trustees of a business
trust in agreeing to an account stated in favor of one of them had
been ratified at a subsequent meeting at which all three of the
trustees were present, *held* not borne out by the record, the minutes
of the meeting being silent as to ratification of the prior action.

---

[1] Accounts and Accounting, 1 C. J., sec. 249, p. 678, n. 71; sec.
331, p. 706, n. 99.
   [2]. Trusts, 39 Cyc., p. 34, n. 45 New.
   [3] Trusts, 39 Cyc., p. 34, n. 45 New.
   [4] Trusts, 39 Cyc., p. 34, n. 45 New.

   1.   Law of accounts stated, see notes in 62 Am. Dec. 85; 136 Am.
St. Rep. 37.

*Appeal from District Court, Cascade County; Stephen J. Cowley, Judge.*

ACTION on an account stated by the Gordon Campbell Petroleum Company against the Gordon Campbell-Kevin Syndicate and others. Judgment for plaintiff and defendants appeal. Reversed and remanded, with direction to enter judgment for defendants.

*Mr. Louis P. Donovan, Messrs. Belden & DeKalb* and *Mr. Merle C. Groene,* for Appellants, submitted a brief; *Mr. Donovan* and *Mr. H. Leonard DeKalb* argued the cause orally.

Courts may look behind the cloak of corporate existence and in all cases such as this will do so, and doing so here discloses Gordon Campbell masquerading as Gordon Campbell Petroleum Company. (*United States Gypsum Co.* v. *Mackey Wall Plaster Co.,* 60 Mont. 132, 199 Pac. 249; *Barnes* v. *Smith,* 48 Mont. 309, 137 Pac. 541; *Edwards* v. *Plains Light & Water Co.,* 49 Mont. 535, 143 Pac. 962; *Hanson E. Co.* v. *Farmers' etc. State Bank,* 53 Mont. 324, 163 Pac. 1151.)

Persons occupying a trust position cannot make express contracts with themselves, as individuals. (*Wilbur* v. *Lynde & Hough,* 49 Cal. 290, 19 Am. Rep. 645; *Smith* v. *Pacific Vinegar & Pickle Works,* 145 Cal. 352, 104 Am. St. Rep. 42, 78 Pac. 550; *Aetna Indemnity Co.* v. *Altadena Min. & Inv. Syndicate,* 11 Cal. App. 26, 104 Pac. 470, 475; *North Confidence Mining & Development Co.* v. *Fitch,* 58 Cal. App. 335, 208 Pac. 330.) The following analogous cases bear out our contention that express contracts under such circumstances cannot be used to cut off inquiry: *Heminway* v. *Heminway,* 58 Conn. 443, 19 Atl. 766, holding that a director can never have a right to use his official position for a purpose hostile to the corporation; *Steele* v. *Gold Fissure Gold Min. Co.,* 42 Colo. 529, 126 Am. St. Rep. 177, 95 Pac. 349, holding that director of

corporation is disqualified from voting on resolution to fix salary; *McConnell* v. *Combination Min. & Mill. Co.,* 30 Mont. 239, 104 Am. St. Rep. 703, 76 Pac. 194, holding void a resolution passed by four directors voting salaries and back pay to three of them; *Loftus* v. *Farmers' Shipping Assn.,* 8 S. D. 201, 65 N. W. 1076, holding a stockholder may avoid contracts disposing of corporate property to two directors where four out of five directors attended the meeting; *McClosky* v. *Goldman,* 62 Misc. 462, 115 N. Y. Supp. 189, holding that acts of officers of corporation in any transaction in which it and they are interested do not bind corporation, except as to innocent parties; *Warren* v. *Para Rubber Shoe Co.,* 166 Mass. 97, 44 N. E. 112, holding an action at law or a suit in equity maintainable by a corporation against an officer acting in bad faith under contracts with a firm of which he was a member; *Olney* v. *Conanicut Land Co.,* 16 R. I. 597, 27 Am. St. Rep. 767, 5 L. R. A. 361, 18 Atl. 181, holding a mortgage of an insolvent corporation's property to its directors to secure advances void as to a judgement creditor; *Haywood* v. *Lincoln Lumber Co.,* 64 Wis. 639, 26 N. W. 184, holding void a mortgage of corporate property to the directors of the corporation; *Tobin Canning Co.* v. *Fraser,* 81 Tex. 407, 17 S. W. 25, holding a director liable for the value of corporate property bought of him for less than its value at an execution sale to which he was not a party. (13 Am. Rep. 126. See, also, 4 Fletcher's Ency. Corp., secs. 2360, 2362, 2376, 2633.)

The courts, when called upon to take jurisdiction of questions pertaining to associations and unincorporated societies, follow and enforce so far as applicable the rules applied to incorporated bodies of the same character where they have no better light afforded by the Constitution, by-laws or articles. (*Otto* v. *Taylor P. & B. Union,* 75 Cal. 308, 7 Am. St. Rep. 156, 17 Pac. 217.)

While the articles of trust provide for action of the majority of the trustees, it is clearly contemplated that all of the trustees must act through the medium of a conference, namely, at a stated meeting. All trustees must act as a unit. (*Page v. Gillett,* 26 Colo. App. 204, 141 Pac. 866; see, also, *Bunn v. City of Laredo* (Tex. Civ. App.), 213 S. W. 320; *Rand v. Farquhar,* 226 Mass. 91, 115 N. E. 286.) Must act jointly in all matters involving discretion. (*Coleman* v. *Connolly,* 242 Ill. 574, 134 Am. St. Rep. 347, 90 N. E. 278.) The action of trustees is to be distinguished from the action of agent. (3 Cal. Jur. 549; *Hogan* v. *Pacific Endowment League,* 99 Cal. 248, 33 Pac. 924; 28 Am. & Eng. Ency. of Law, 2d ed., 986; 26 R. C. L., sec. 196.)

*Mr. S. C. Ford* and *Mr. I. W. Choate,* for Respondent, submitted a brief; *Mr. Choate* argued the cause orally.

Appellants say in their brief: "The law does not permit one who acts in a fiduciary capacity to deal with himself in his individual capacity, and express contracts thus made are contrary to public policy and void." This brings us to the heart of this case. All other questions are secondary and subordinate to this the main contention of appellants, that because Gordon Campbell was both a trustee of the syndicate and an officer and director of the Petroleum Company, therefore a court of equity will deny to him even so much as the power to admit that the syndicate owes the Petroleum Company a matter of $45,000 of money put up by Gordon Campbell to save the property of the syndicate in its extremity, and without a pledge of one penny's worth of the property of the syndicate by way of security. This harsh, inequitable and unjust rule which finds support in the California case of *Smith* v. *Pacific Vinegar Works,* 145 Cal. 352, 104 Am. St. Rep. 42, 78 Pac. 550, is emphatically not the law in Montana nor in most other jurisdictions. Was the action of the fiduciary

fair, in good faith and open and aboveboard? This is the
test applied in the case of *Coombs* v. *Barker,* 31 Mont. 526,
79 Pac. 1. This case settled the law in Montana on this ques-
tion and was followed in the three subsequent cases of *Tatem*
v. *Eglanol Mining Co.,* 42 Mont. 475, 113 Pac. 295, *O'Rourke*
v. *Grand Opera House Co.,* 47 Mont. 459, 133 Pac. 965, and
*Mayger* v. *St. Louis Mining & Milling Co.,* 68 Mont. 492, 219
Pac. 1102.

But it is suggested in the brief of appellants that there is a
difference in the obligation owed by a director of a corporation
to his company and its stockholders and that owed by a trustee
of a common-law trust to his *cestui que trust* and the subject
matter thereof, and that the relation of the latter is "more
intimate and confidential than that of the former," in support
of which contention *Tatem* v. *Eglanol* and section 7890, Re-
vised Codes of 1921 are cited. That this contention has no
merit clearly appears from the fact that this court, in the
case of *Mayger* v. *St. Louis Mining Co.* above cited, expressly
applies sections of the Code dealing with the subject of trusts,
*i. e.,* sections 7888, 7889 and 7895, to a case involving the
relation of a director to a corporation, thus showing that
the same measure of responsibility which rests on a trustee,
to deal faithfully with his trust rests on a director of a cor-
poration in dealings with his company. Likewise in *Tatem*
v. *Eglanol, supra,* this court quotes from two California
cases, *i. e., Phillips* v. *Sanger Lumber Co.,* 130 Cal. 431, 62
Pac. 749, and from *Schnittger* v. *Old Home Con. Min. Co.,*
144 Cal. 603, 78 Pac. 9, with approval. These two cases
applied the same corresponding sections of the California
Code relative to the duties of trustees, which are relied on
by the appellants in this case, to cases involving the relation-
ship between directors and their corporation.

Appellants say in their brief: "No action could be taken
on this subject (*i. e.,* the statement of the account) by a

majority of the trustees without a meeting duly called for the purpose of acting upon the subject at which all of the trustees had opportunity to be present.'' Nowhere in the articles of the trust is there any provisions relative to the manner of calling meetings nor as to the necessity of a formal notice thereof. No notice of either ''stated meetings'' or other meetings was required to be given. The record shows that the meetings at which the account stated was approved was a regular meeting of the trustees of the syndicate and that a majority of the trustees were present. Also at the adjourned meeting of April 12, 1924, all the trustees were present, at which time the indebtedness was discussed and it was voted to execute a note for it.

The record does show that ''Mr. Harvey for the most of the period of time after he was elected was a resident of Eugene, Oregon.'' We do not, however, find any showing in the record that Mr. Harvey was not notified of meetings of the trustees of the syndicate. Such being the record, and assuming for the sake of the argument that it was necessary to give him notice in Eugene, Oregon, of the holding of meetings of the trustees of the syndicate, we think the same rule should apply here as in the case of notice of meetings of trustees of a corporation: ''In the absence of proof to the contrary, it will be presumed that the meeting was regularly called and that due and sufficient notice thereof was given to each director and the person who asserts the contrary has the burden of proof.'' (14A C. J., p. 90, citing numerous authorities.) But it was not necessary to give notice of the holding of meetings to absent directors: ''Lack of notice to each director may be excused—where some of the directors are out of the jurisdiction.'' (*Id.*, p. 89; citing *Chase* v. *Tuttle,* 55 Conn. 455, 3 Am. St. Rep. 64, 12 Atl. 874, and *National Bank* v. *Shumway,* 49 Kan. 224, 30 Pac. 411.) In any event the acts of the majority of the trustees done at the

meeting of March 4 were ratified by the trustee Harvey at the meeting of April 12, at which he was present.

In spite of the rule that trustees cannot delegate their power, they may be bound when they consent and concur in the acts of a single trustee when he acts as the agent of other. (*Fritz* v. *City Trust Co.*, 72 App. Div. 532, 76 N. Y. Supp. 625.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In this action, upon an account stated, plaintiff recovered judgment, and defendants appealed.

The record discloses that on April 2, 1921, Gordon Campbell, Helen Campbell, his wife, and L. C. Stevenson executed, acknowledged and caused to be recorded a declaration of trust, in which the declarants recited that their purposes were to acquire certain real property, hold the same in trust, and explore it for oil and gas, and to conduct other operations enumerated; that the beneficial interests acquired should be represented by 10,000 units or shares evidenced by certificates; that the units or shares should be sold; that the trust should be known as the Gordon Campbell-Kevin Syndicate; that the business of the syndicate should be managed by a board of trustees consisting of three members, the first board to be composed of the declarants; that Stevenson should hold office until the first Monday in January, 1923, Mrs. Campbell, until the first Monday in January, 1924, and Gordon Campbell, until the first Monday in January, 1925; that, at the annual shareholders' meeting on the first Monday of January of each year beginning in 1923, one trustee should be elected for the term of three years. Provision was made for regular monthly meetings of the board and for called meetings. The other terms of the declaration are not material here.

It appears that the 10,000 units or shares were sold; that at the annual meeting in January, 1923, E. M. Harvey was

elected trustee to succeed Stevenson; that on February 10, 1923; Helen M. Campbell resigned as a trustee; that on February 19, an attempt was made to appoint W. W. Rhea to fill the unexpired term; that later Rhea resigned, and on August 6, 1923, an attempt was made to appoint C. A. Springmyer to succeed him.

On March 4, 1924, there was what purported to be a meeting of the trustees of the syndicate, at which meeting Gordon Campbell and Springmyer were the only persons present. Gordon Campbell presented an account for $40,903.94 in behalf of the plaintiff and against the syndicate. This account had been prepared by Springmyer at Campbell's direction, and the purported action thereon, as disclosed by the minutes of the meeting, follows:

"Statement of account in detail between the Syndicate and the Gordon Campbell Petroleum Company as of March 1, showing amount of $40,903.94 owing by the Syndicate to the Gordon Campbell Petroleum Company was presented. The same was examined and discussed, and having been found correct, was duly approved and accepted as correct."

We deem it unnecessary to consider at length Springmyer's title to the office of trustee. For the purposes of this appeal, he may be treated as a *de facto* trustee.

An account stated is a new contract arising out of an ac-[1] count existing between the parties—an agreement that the items of the account and the balance struck are correct, with an agreement, express or implied, for the payment of such balance. The consideration for the new contract is the original account (*Martin* v. *Heinze*, 31 Mont. 68, 77 Pac. 427), or speaking with greater exactness, the consideration is the settlement of the original account (*Johnson* v. *Gallatin Valley Milling Co.*, 38 Mont. 83, 98 Pac. 883).

This action is upon the new contract, which it is alleged was entered into on March 3, 1924, and plaintiff must recover

upon that contract or fail. (*Noyes* v. *Young,* 32 Mont. 226, 79 Pac. 1063.)

While plaintiff is in form a corporation, it is in fact but an *alias* under which Gordon Campbell was conducting his private business at the times mentioned herein. (*Hanson Sheep Co.* v. *Bank,* 53 Mont. 324, 163 Pac. 1151.) This is apparent from Campbell's own testimony, and it is admitted to be the fact in the brief of plaintiff's counsel.

If, then, the new contract pleaded was entered into at any time, it must have been made by Gordon Campbell as one party thereto and the syndicate represented by someone competent to act for it, as the other party.

The record discloses that the original account was presented by Gordon Campbell, and this constituted a sufficient offer. If it were agreed to and acknowledged to be correct by the syndicate, then there was an acceptance of the offer, with the result that the account was stated and defendants cannot complain of the judgment. But it is axiomatic that a person cannot contract with himself. There must be the meeting of two separate and independent minds, at least two parties to a contract, and each must be competent. (Sec. 7468, Rev. Codes 1921.)

It is the contention of the defendants that the plaintiff's own case discloses a want of competent parties to make the new contract pleaded and relied upon.

The defendant syndicate is not a legal entity. It is merely [2] a voluntary association of individuals—a business trust. The title to the property in which the individuals, as unit holders, are interested, is held by a board of trustees consisting of three persons, at least two of whom must concur in order to render valid any act done by or on behalf of the syndicate. The declaration of trust so provides, and its provisions measure the powers of the trustees so far as we are concerned now. (Sec. 7914, Rev. Codes 1921.) The representatives of the

individuals are trustees of an express trust (sec. 7902, Rev. Codes), and the individuals as unit holders are the beneficiaries (sec. 7881, Rev. Codes).

But the trustees are not merely agents who act independently [3] one of another. They constitute a board and they can act only as a unit (sec. 6789, Rev. Codes) in the disposition of any business of the trust which requires the exercise of judgment or discretion (*Coleman* v. *Connolly,* 242 Ill. 574, 134 Am. St. Rep. 347, 90 N. E. 278; *Hosch Lumber Co.* v. *Weeks,* 123 Ga. 336, 51 S. E. 439; Sears' Trust Estates as Business Companies, sec. 132; Dunn on Business Trusts, secs. 97, 98).

The relationship existing between the trustees and the beneficiaries is somewhat analogous to, but is of a more confidential character than, that existing between the directors of a corporation and the corporation itself (*Tatem* v. *Eglanol Min. Co.,* 42 Mont. 475, 113 Pac. 295), and it is elementary that a corporation acts through its board of directors as an entity and not through the individuals who may happen to compose the board (*Farrell* v. *Gold Flint Min. Co.,* 32 Mont. 416, 80 Pac. 1027).

If the contract, the account stated, was ever made at all, it was made on March 4 or April 12, 1924, and on each of those dates Gordon Campbell was one of the three trustees of the syndicate. The claim presented on March 4 was owned by Gordon Campbell, and the action taken on that day was adverse to the syndicate, in that it assumed to fix definitely a liability upon the syndicate of more than $40,000.

So much of section 7890, Revised Codes of 1921, as is material here, reads as follows:

"Neither a trustee nor any of his agents may take part in any transaction concerning the trust in which he or any one for whom he acts as agent has an interest, present or contingent, adverse to that of his beneficiary, except as follows:

"1. When the beneficiary, having capacity to contract, with

full knowledge of the motives of the trustee, and of all other facts concerning the transaction which might affect his own decision, and without the use of any influence on the part of the trustee, permits him to do so.''

Since Campbell was a trustee of the syndicate and was presenting his individual claim against it, he could not vote as a trustee upon the approval of his claim, if his vote were necessary to secure favorable action. (*Curtin* v. *Salmon River etc. Co.,* 130 Cal. 345, 90 Am. St. Rep. 132, 62 Pac. 552; 4 Fletcher's Ency. Corp., secs. 2340–2342), or, stated in different terms, before he could participate, the other two trustees must have been present and consenting.

The record discloses that Campbell and Springmyer were the only persons present at the meeting on March 4, when Campbell presented his account; hence Campbell's presence was necessary to constitute a quorum, and his vote was necessary to the allowance or approval of his account. Under these circumstances it is impossible that a contract allowing his claim could have been made, for Campbell was disqualified to act upon the matter as a trustee. (*Jones* v. *Morrison,* 31 Minn. 140, 16 N. W. 854; *North Confidence M. & D. Co.* v. *Fitch,* 58 Cal. App. 329, 208 Pac. 328.) This would be the rule if the syndicate were a corporation and Campbell and Springmyer its directors. In *McConnell* v. *Combination M. & M. Co.,* 31 Mont. 563, 79 Pac. 248, this court said: ''The directors had power to adopt a Code of by-laws (Comp. Stats. 1887, Div. 5, sec. 454); but they could not, even under a by-law, vote a salary to one of their number, when the vote of such director was necessary to make up a quorum. Under the application of this principle it makes no difference whether the trustees intended to defraud the company and the stockholders of the amount of money appropriated for the purpose of paying their salaries, or whether they acted in the utmost good faith.'' Because of the more intimate relationship exist-

ing between a trustee and the beneficiary, this rule is applied most rigorously.

Campbell was incompetent to act upon his own claim, as a trustee of the syndicate, hence the pretended approval of his claim—the pretended statement of the account—was void for want of competent representatives of the syndicate. The transaction amounted to nothing more than the approval of the account by Springmyer alone.

But it is insisted by counsel for plaintiff that the pretended [4] statement of the account by Campbell and Springmyer was ratified at the meeting of the trustees on April 12, when Harvey, Campbell and Springmyer were all present, and when Campbell's vote was not necessary to favorable action. It is a sufficient answer to say that, even if the pretended contract of March 4 might have been ratified and made binding by the board by appropriate action taken on April 12, such action was not taken.

It is not material to inquire whether the trustees should have kept a record of the proceedings of their board meetings. They did keep such a record, and the minutes of the meeting of April 12 assume to disclose just what action was taken, and those minutes were approved and signed by Campbell as president of the board and by Springmyer as secretary. Springmyer testified that at that meeting "this identical account stated was considered and discussed." He does not say that it was approved or that the action of Campbell and himself in assuming to state the account, was ratified. Concerning the meeting of April 12, Campbell testified: "All of the trustees were present, including Harvey. I personally attended that meeting, and I signed those minutes, and those minutes correctly state what business was transacted at that meeting or what was done at that meeting."

Since Campbell is, in fact, the plaintiff herein, and was testifying in his own behalf under examination by his own counsel, we may assume that his statement above is true, and

[75 Mont. 261.]
is as favorable to him as the facts would warrant. The minutes to which he refers read as follows: ''The affairs of the syndicate were discussed. The indebtedness of the syndicate to the Gordon Campbell Petroleum Company was also discussed, and, upon motion made by Trustee Harvey, seconded by Trustee Springmyer, it was moved and carried that the trustees be empowered, authorized, and directed to execute a note to Gordon Campbell Petroleum Company for the indebtedness of the syndicate to the said Gordon Campbell Petroleum Company, or any part of such indebtedness, on behalf of the syndicate.''

It will be observed that the amount of the indebtedness is not mentioned, that nothing whatever is said concerning an account stated, no mention made of the pretended meeting of March 4. If it had been intended to ratify the action of Campbell and Springmyer, it is all but inconceivable that something would not appear to indicate that intention. The minutes negative the existence of such intention, for, not only do they not purport to approve the statement of the account, they recite that the board ordered that a note be given for the amount of the indebtedness, without indicating the amount.

It is easily conceivable that Trustees Harvey and Springmyer, after due consideration of the matter, might have been quite willing to execute a note which would postpone action for a definite time and altogether unwilling to state an account which might be sued upon at once, without the necessity of proving the items upon which such statement was based.

But whatever the facts may be, this record fails to show that the action of Campbell and Springmyer, in assuming to state the account on March 4, was ever ratified by the board, either on April 12 or at any other time. The evidence not only fails to sustain the allegations of the complaint; it discloses affirmatively that the contract relied upon was not made.

The judgment is reversed and the cause is remanded, with directions to enter judgment for defendants for their costs.

*Reversed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, STARK and MATTHEWS concur.

Rehearing denied February 15, 1926.