WILLIARD ET AL., RESPONDENTS, *v.* CAMPBELL OIL CO.
ET AL., APPELLANTS.

(No. 5,939.)

(Submitted June 16, 1926. Decided July 16, 1926.)

[248 Pac. 219.]

*Cancellation of Instruments — Trusts and Trustees — Common
Law Trusts — Contracts — Invalidity Because of Trustees'
Interest—Laches—Discretion—Findings—When Conclusive—
Evidence—Self-serving Declarations.*

Common-Law Trust—Trustees Interested in Contract Disqualified from
Acting Thereon.

1. Since a trustee cannot take part in any transaction concern-
ing the trust in which he is interested (sec. 7890, Rev. Codes
1921), a contract entered into between a common-law trust at a
meeting of its board of trustees attended by only two of its
three members, and a company of which one of the two was
the virtual owner, was a nullity, and the fact that the third
member in writing subsequently gave his approval did not render
it valid for the reason that under section 6789, the board could
act only as a board when assembled as such and not through the
individuals composing it.

Same — Transactions in Which Trustees Interested, Presumed Without
Consideration—Undue Influence.

2. Under section 7895, Revised Codes, where two of three trustees
of a common-law trust were officers of an oil company to which the
trustees granted an extension of a drilling lease on lands owned by
the trust under circumstances showing lack of good faith, and
whose interests were adverse to those of the trust, it will be presumed
that the agreement was entered into without consideration and
through undue influence.

Evidence—Letters—Self-serving Declarations—Inadmissibility.

3. Letters written by defendant in an action for the cancellation
of a lease on oil lands and offered by him in evidence *held* to have
been properly excluded, as self-serving declarations.

Equity—Laches—Discretion.

4. The question of laches is addressed to the sound legal discretion
of the trial court sitting in equity, and its decision will not be dis-
turbed on appeal unless it is so clearly wrong as to amount to an
abuse of discretion.

Same—When Doctrine Inapplicable.

5. The doctrine of laches has no application where the persons
(trustees of a common-law trust) upon whom the duty of prosecut-
ing an action in behalf of those for whom they act devolves, were
themselves the wrongdoers.

---

1. See 26 R. C. L. 1327.
3. See 1 R. C. L. 470.

Common-Law Trust—Cancellation—of Instruments—Action by Trustees—
Doctrine of Laches Held Inapplicable.

6.  Where two trustees of a common-law trust elected to replace two
others who had taken part in transactions resulting in injury to the
trust were shown to have had knowledge of the alleged wrongdoing
of the displaced trustees for a considerable period of time before
their election—one of them having made efforts for two and a
half years to bring about the selection of a new board to remedy con-
ditions—the defense of laches was not available to defendant in an
action brought by them in their representative capacity as trustees
of the trust composed of 2,600 unit holders, and not as individuals,
within a month after their election.

Equity—Findings—When Conclusive.

7.  Where the contention is made on appeal in an equity case
that the evidence is insufficient to sustain the court's findings,
they will not be disturbed unless there is a decided preponderance
of the evidence against them.

[1]  Trusts, 39 Cyc., p. 34, n. 45 New; p. 296, n. 20; p. 307, n. 71.
[2]  Trusts, 39 Cyc., p. 34, n. 45 New.
[3]  Evidence, 22 C. J., sec. 193, p. 220, n. 26; p. 221, n. 27.
[4]  Appeal and Error, 4 C. J., sec. 2753, p. 796, n. 15.  Equity, 21
C. J., sec. 217, p. 218, n. 3; p. 219, n. 4.
[5]  Equity, 21 C. J., sec. 231, p. 238, n. 20.
[6]  Equity, 21 C. J., sec. 231, p. 238, n. 17, 20.
[7]  Appeal and Error, 4 C. J., sec. 2869, p. 900, n. 96.

*Appeal from District Court, Toole County; John J. Greene,
Judge.*

SUIT by Harry O. Williard and others, as trustees of the
Gordon Campbell-Kevin Syndicate, against the Campbell Oil
Company and others.  Judgment for plaintiffs, and defendants
appeal.  Affirmed.

*Mr. I. W. Choate* and *Messrs. Hartman & Ford,* for Appel-
lants, submitted a brief; *Mr. Choate* and *Mr. S. C. Ford* ar-
gued the cause orally.

The action by a single trustee of a joint trust may be rati-
fied if done in a legal way by his cotrustees, ratification of the
contract implying the giving of consent to or the sanction of
its items.  (*Hoosier Mining Co.* v. *Union Trust Co.,* 173 Ky.
505, 191 S. W. 305; *Bunn* v. *City of Laredo* (Tex. Civ. App.),
213 S. W. 320, 323; *Rand* v. *Farquhar,* 226 Mass. 91, 115 N. E.

7. See 2 R. C. L. 202.

286; *West Side Oil Co.* v. *McDorman* (Tex. Civ. App.), 244 S. W. 167; *Bibb* v. *Hall,* 101 Ala. 79, 14 South. 98.)

By reason of Gordon Campbell's interest in the oil company, the contract in question was not void, but only voidable. (*McConnell* v. *Combination Min. & Mill. Co.,* 30 Mont. 239, 104 Am. St. Rep. 703, 76 Pac. 194; *Mobile Land Imp. Co.* v. *Gass,* 142 Cal. 520, 39 South. 229; *Bassett* v. *Fairchild,* 132 Cal. 637, 52 L. R. A. 611, 64 Pac. 1082; *Smith* v. *Los Angeles I. & L. etc. Assn.,* 78 Cal. 289, 12 Am. St. Rep. 53, 20 Pac. 677; *Burns* v. *National Min. Tunnel & Land Co.,* 23 Colo. App. 545, 130 Pac. 1037; *Stearns* v. *Page,* 48 U. S. 819, 12 L. Ed. 928; *Cardoner* v. *Day,* 253 Fed. 572; *Whitelock* v. *Dorsey,* 121 Md. 497, 88 Atl. 241.)

The plaintiffs are guilty of laches and are estopped from maintaining this action. (*Patterson* v. *Hewitt,* 195 U. S. 309, 49 L. Ed. 214, 25 Sup. Ct. Rep. 35 [see, also, Rose's U. S. Notes]; *Speidel* v. *Henrici,* 120 U. S. 377, 30 L. Ed. 718, 7 Sup. Ct. Rep. 610; *Riddle* v. *Whitehill,* 135 U. S. 621, 34 L. Ed. 283, 10 Sup. Ct. Rep. 924; *Twin-Lick Oil Co.* v. *Marbury,* 91 U. S. 587, 3 Morr. Min. Rep. 688, 23 L. Ed. 328; *Johnston* v. *Standard Mining Co.,* 148 U. S. 360, 37 L. Ed. 480, 13 Sup. Ct. Rep. 585; *Great West. Min. Co.* v. *Woodmas etc. Co.* 14 Colo. 90, 23 Pac. 908; *Graff* v. *Portland Town & Mineral Co.,* 12 Colo. App. 106, 54 Pac. 854.)

*Mr. Louis P. Donovan, Messrs. Belden & De Kalb,* and *Mr. Merle C. Groene,* for Respondents, submitted a brief; *Mr. H. Leonard De Kalb* argued the cause orally.

The contract involved herein is wholly void. (Rev. Codes 1921, secs. 6796, 7888, 7889, 7891, 7895,; 23 R. C. L., sec. 189; *Saltmarsh* v. *Beene,* 4 Port. (Ala.) 283, 30 Am. Dec. 525; 39 Cyc., note 58; *Clay* v. *Thomas,* 178 Ky. 199, 1 A. L. R. 738, 198 S. W. 762; *Ringgold* v. *Ringgold,* 1 Har. & G. (Md.) 11, 18 Am. Dec. 250; *United States Gypsum Co.* v. *Mackey W. P. Co.,* 60 Mont. 132, 199 Pac. 249; *Eberhardt* v. *Christiana Win-*

*dow Glass Co.,* 9 Del. Ch. 284, 81 Atl. 774; *McFadden* v. *Jenkins,* 40 N. D. 422, 169 N. W. 151.)

The doctrine of laches has no application to suits to enforce an express trust. (Pomeroy's Equity Jurisprudence, secs. 418, 419; 39 Cyc. 600, 601.) Assuming for purpose of argument that the rule of laches applies to a suit to enforce such a trust, the facts of this case negative any laches on the part of the plaintiffs. (39 Cyc. 450; 21 C. J. 238; *Whitten* v. *Dabney,* 171 Cal. 621, 154 Pac. 312; *Reed* v. *Robinson,* 83 Okl. 68, 200 Pac. 773; 11 Cal. Jur. 1065.) Laches cannot be predicated upon delay where there is no one qualified to sue. (21 C. J. 238.)

The board of trustees could act only as a board, assembled as such ''and not through the individuals who may happen to compose the board.'' (*Farrell* v. *Gold Flint Mining Co.,* 32 Mont. 416, 80 Pac. 1027; *Gordon Campbell Pet. Co.* v. *Gordon Campbell-Kevin Syndicate,* 75 Mont. 261, 242 Pac. 540; *Page* v. *Gillett,* 26 Colo. App. 204, 141 Pac. 866; *Bunn* v. *City of Laredo* (Tex. Civ. App.), 213 S. W. 320; *Rand* v. *Farquhar,* 226 Mass. 91, 115 N. E. 286.) They must act jointly in all matters involving discretion. (*Coleman* v. *Connolly,* 243 Ill. 574, 90 N. E. 278.) The action of trustees is to be distinguished from the action of agent. (3 Cal. Jur. 549; *Hogan* v. *Pacific Endowment League,* 99 Cal. 248, 33 Pac. 924; 26 R. C. L., sec. 196.)

MR. JUSTICE STARK delivered the opinion of the court.

The plaintiffs are the trustees of the Gordon Campbell-Kevin Syndicate (hereafter called the syndicate), a common-law trust, and in that capacity brought this action to obtain a decree of the court to set aside a certain contract or drilling agreement entered into on June 4, 1923, between the syndicate and the Campbell Oil Company and any purported extension or renewal thereof, and for recovery of the property purported to have been transferred or alienated thereby.

The case was tried to the court without a jury and resulted in a decree in favor of the plaintiffs. The court made formal

findings of fact, reciting: That the syndicate was composed of a large number of persons associated together under the terms and conditions of a certain agreement and declaration of trust which had been theretofore duly executed, acknowledged and recorded. That at the time the suit was instituted, the plaintiffs Williard, Harvey and Roy were the duly elected, acting and qualified trustees thereof, and as such were authorized to institute actions and prosecute the same in its behalf. That the defendant Campbell Oil Company was a corporation organized under the laws of the state of Delaware and authorized to transact business in the state of Montana. That the defendant Gordon Campbell Petroleum Company and the defendant Royal Canadian Oil Company were both corporations organized under the laws of this state. That on the fourth day of June, 1923, Gordon Campbell, E. M. Harvey and W. W. Rhea were purporting to act as trustees of the syndicate, and on said date the Campbell Oil Company was in control of the defendant Gordon Campbell, who then owned a majority of the stock thereof and was its president and managing officer. That on said fourth day of June, and prior thereto, the syndicate was the owner of certain oil and gas leases located in Toole county, and elsewhere in this state, and particularly of those mentioned in the complaint, and on said date a purported drilling agreement was made and entered into between the defendant Campbell Oil Company and the trustees of the syndicate, but that Trustee Harvey was not present at the meeting of the board of trustees at which the agreement was authorized, nor was he present at any other meeting of the board of trustees at which said agreement was considered, approved and ratified. That said purported agreement so entered into on the fourth day of June, 1923, was not entered into in good faith, in that it was known by the said defendant Gordon Campbell and the said Campbell Oil Company that the said oil company was financially unable to carry out the terms and conditions thereof, and that it was entered into for the purpose of giving to said Gordon Campbell, by and through his control of the Campbell Oil Company, large and substantial interests in the

property of the syndicate which he did not theretofore possess, and that said Gordon Campbell secured the signatures of the other trustees, Harvey and Rhea, to said agreement without any meeting of the trustees whereat the terms and conditions thereof were discussed or deliberated upon, and that it was obtained by him for the Campbell Oil Company through his influence as a trustee of the syndicate, and that by the terms of said agreement he fraudulently obtained an interest in the property of the syndicate and took an unfair advantage of its unit holders.

That an extension and modification of the aforesaid agreement was attempted to be made on the twelfth day of April, 1924, but that said attempted extension and modification was void and of no force or effect because the same was without consideration and was not authorized to be entered into on behalf of the syndicate at any meeting of its trustees, and was attempted to be entered into by Gordon Campbell and C. A. Springmyer acting as trustees of the syndicate without the concurrence, approval or ratification of the third trustee, and that said extension was not made in good faith, was unfairly obtained, and was to the disadvantage of the syndicate and to the advantage of the Campbell Oil Company and Gordon Campbell, who controlled it. That the defendants Campbell Oil Company, Gordon Campbell Petroleum Company, and Royal Canadian Oil Company, and each of them, on June 4, 1923, and April 12, 1924, had knowledge and notice of the invalidity of each of the above-mentioned agreements and all of the facts and circumstances connected therewith. That the plaintiffs Williard and Roy became duly elected, qualified and acting trustees of the syndicate on or about the fifth day of January, 1925, and that prior thereto Williard and Roy were without any knowledge of the existence of the above-mentioned agreements, and that this action was commenced within a reasonable time after the election and qualification of said Williard and Roy as trustees of the syndicate.

As conclusions of law from the foregoing findings of fact, the court declared that the contract dated June 4, 1923, and

also the alleged extension thereof, dated April 12, 1924, were and are invalid and should be canceled and annulled, and that the plaintiffs were not guilty of laches and had not by their conduct or otherwise estopped themselves from maintaining this action.

In accordance with these findings and conclusions, a decree was entered adjudging that the agreement purporting to have been made on the fourth day of June, 1923, and also the purported agreement of April 12, 1924, should be canceled, annulled and held for naught, and that the defendants and all persons claiming under them should be enjoined from asserting any rights, privileges, or emoluments by, through, or under said agreements, or either of them. From this judgment the defendants have appealed, and on their behalf it is contended that the lower court erred in making the foregoing findings and conclusions of law and entering judgment in favor of the plaintiffs.

The declaration or agreement of trust, referred to in the court's findings, was executed by Gordon Campbell, Helen M. Campbell, and L. C. Stevenson on April 2, 1921, and it was recited therein that they proposed to secure certain property "for the purpose of maintaining and operating oil leases" and to hold and manage the same in the manner and subject to the stipulations contained in the declaration, which provided that the trustees, who should always be three in number, in their collective capacity should be designated as "trustees of the Gordon Campbell-Kevin Syndicate"; that Stevenson should hold office as trustee until the first annual meeting of the unit holders, and H. M. Campbell and Gordon Campbell should hold their offices as trustees, respectively, until the second and third annual meeting of the unit holders, provided that these trustees, as well as those thereafter elected, should hold office until their successors had been elected and had accepted the trust, and that in case of a vacancy in the office of trustee, caused by death, resignation, or inability to act, the remaining trustees should fill the vacancy for the unexpired term. Under this declaration the trustees were given very general authority in

connection with the purchase, acquisition, sale and operation of real estate, leaseholds and oil properties in general for the benefit of the trust, the absolute control, management and disposition of which were committed to them, "except that the sale of the main property interest of the company must be assented to and validated by the affirmative vote of shareholders representing two-thirds of the outstanding shares of the company." The beneficial interest in the trust was divided into 10,000 units of the expressed par value of $25 each, which were to be evidenced by negotiable certificates of ownership. The annual meeting of the unit holders for the election of trustees was appointed for the first Monday in January of each year, beginning with the year 1923. Thus it appears that the term of office of the trustees named in the declaration by its terms would expire as follows: L. C. Stevenson on the first Monday of January, 1923, Helen M. Campbell on the first Monday of January, 1924, and Gordon Campbell on the first Monday of January, 1925. At a meeting of the trustees held on October 22, 1921, a resolution was adopted declaring the office of L. C. Stevenson as a trustee vacant, and appointing A. Beardsley to fill the vacancy; but Beardsley did not accept the appointment, and so far as this record shows the trustees of the syndicate from that date down to January 2, 1923, were Gordon Campbell and Helen M. Campbell. At the annual meeting of the unit holders held on the last-mentioned date, E. M. Harvey, of Eugene, Or., was elected as trustee and duly qualified. The minutes of a special meeting of the trustees called for February 19, 1923, recited that there were present Gordon Campbell and "E. M. Harvey by proxy and consent." At this meeting the resignation of Helen M. Campbell as trustee was presented and accepted, and one W. W. Rhea was appointed to fill the unexpired term caused by her resignation, and he filed a written acceptance of the appointment.

Prior to June 4, 1923, the syndicate had acquired leases and leasehold interests in about 10,000 acres of land located in the northern Montana oil fields, and about 2,600 different indi-

viduals had become unit holders in the syndicate by the purchase of certificates of ownership therein.

The Campbell Oil Company was organized on August 29, 1922, with a capital stock of $10,000,000. At a special meeting of the stockholders of this company held on May 26, 1923, there were present, according to the minutes, "Gordon Campbell, Helen M. Campbell, L. V. Beaulieu, the same representing all the capital stock of the corporation issued and entitled to notice and vote." In an application by this company for a permit to sell its securities in the state of Washington, verified by Gordon Campbell on June 5, 1923, it is recited that up to that time no stock of the company had been issued; that a large amount of property consisting of oil and gas lease acreage, together with equipment, had been set over to the company by Campbell personally in payment for all the capital stock of the company, with the exception of a small amount necessary to qualify the other two directors, and that the plan upon which the company proposed to transact its business was that Campbell should personally own the capital stock of the corporation with the exception of the qualifying shares of the other directors; that he desired to donate to the company 20,000 shares of his personal stock, sell some, and give the company fifty per cent of the proceeds, *etc.* In this application it was further shown that Campbell was the president of the company, and that one C. A. Springmyer was its secretary; also, that Helen M. Campbell was one of its directors. So far as disclosed by the record, there was never any change in these officers and directors. From this it appears that at the time in question, the Campbell Oil Company was owned, dominated, and controlled by Gordon Campbell.

Under the above-mentioned conditions, on June 4, 1923, a "regular monthly meeting" of the board of trustees of the [1] syndicate was held, at which there were present Trustees Campbell and Rhea. The minutes of this meeting recite that there was brought to the attention of the meeting a written agreement entitled "contract," by and between the Campbell Oil Company, a corporation, and Gordon Camp-

bell, W. W. Rhea and E. M. Harvey, as trustees of the syndicate, which provided for a lease to the oil company of all the holdings of the syndicate for an indefinite period of time; that therein the company agreed to drill ten wells on the syndicate's holdings within a period of one year from date, provided the first well drilled was a commercial well, and to begin such drilling operations on or before June 15, 1923, to prosecute the same with reasonable diligence on a fifty-fifty working basis, as set out in the contract. It is further recited that this proposed contract was considered and discussed by those present, and the proceedings culminated in a resolution adopted by the vote of Campbell and Rhea, authorizing the execution of the contract in the form as presented.

Except possibly as one of the 2,600 unit holders, Campbell at that time had no interest in the 10,000 acres of leasehold rights owned and possessed by the syndicate. After the adoption of the resolution and the execution of .the contract in accordance therewith, he, or his *alter ego,* the company, had a half interest therein. This corporation, to which the complete control of the syndicate's acreage was thus delivered, was entirely without means to develop the property, and Campbell's testimony indicates that there was no intention on his part or on the part of the Campbell Oil Company to drill the ten wells specified in the contract, and that the provision for drilling ten wells was inserted therein without any intention on his part that the company should be required to or should carry out these provisions, except in the event that he should lose control of the company.

Campbell, being a trustee in the syndicate, and being also the owner of the oil company, its president and manager, and in fact the real party represented under that name in the negotiations for the contract with the syndicate, was disqualified from taking part and voting as a trustee of the syndicate (sec. 7890, Rev. Codes 1921), and since his presence and vote were necessary to make up a majority of the trustees, the proceedings at the meeting of June 4 amounted to noth-

ing more than an approval of the contract by Trustee Rhea alone. The contract was sent to Trustee Harvey and apparently signed and acknowledged by him in the State of Oregon on June 22, 1923, but this could not have the effect of curing the defect in its authorization, for these trustees "constitute a board, and they can act only as a unit [sec. 6789, Rev. Code 1921] in the disposition of any business of the trust which requires the exercise of judgment or discretion" (*Gordon Campbell Petroleum Co.* v. *Gordon Campbell-Kevin Syndicate,* 75 Mont. 261, 242 Pac. 540), and, like the board of directors of a corporation, can act only as a board assembled as such "and not through the individuals who may happen to compose such board" (*Farrell* v. *Gold Flint Min. Co.,* 32 Mont. 416, 80 Pac. 1027).

From the foregoing it is apparent that the attempted approval of the contract at the meeting of the trustees on June 4 was a nullity for want of a majority of the trustees present and qualified to vote thereon (*Gordon Campbell Petroleum Co.* v. *Gordon Campbell-Kevin Syndicate, supra*), and that the attempted subsequent approval of the contract by an individual member of the board in Oregon did not affect or cure its original invalidity.

But counsel for defendants contend that even though the [2] attempted approval of the contract by the trustees of the syndicate at the meeting of June 4, 1923, was ineffective, the same was discussed, recognized, ratified, validated, and a modification and extension thereof agreed upon at a meeting of the trustees of the syndicate held on April 12, 1924, at which all three trustees were present, and thereby the contract was made binding and effective. A consideration of this contention requires reference to the history of the syndicate subsequent to June 4, 1923.

On August 6, 1923, a meeting of the trustees of the syndicate was held, the minutes of which recite that Gordon Campbell and E. M. Harvey were present; W. W. Rhea being absent. Harvey, however, in the course of the trial testified that he was not in fact present at that meeting, and coun-

sel for the defendants concede he was not.  So it appears that
Campbell was the only trustee in attendance at this so-called
meeting.  The minutes recite that the written resignation of
W. W. Rhea as trustee was brought to the attention of the
meeting, and thereupon "Mr. Campbell moved the acceptance
of the resignation and declared the office vacant."  Mr. Camp-
bell then moved that C. A. Springmyer be appointed trustee
to fill the unexpired term of Trustee Rhea, resigned, which
motion appears to have been carried by the unanimous vote
of Campbell.  Springmyer, being present, filed his written
acceptance of the office.

If it be conceded that the proceedings of the so-called
meetings of the syndicate trustees held on February 19, 1923,
and August 6, 1923, possessed sufficient validity to constitute
either Rhea or Springmyer a trustee, then after the meet-
ing of August 6 the trustees of the syndicate were Gordon
Campbell, E. M. Harvey and C. A. Springmyer.

The minutes of the meeting of trustees of the syndicate
held on April 12, 1924, above referred to, recite that all the
trustees were present, and further: "The advisability of
modifying in some way the Campbell Oil Company-Syndicate
50-50 agreement was further discussed.  Owing to the many
unfavorable conditions in the oil industry now . existing, and
which have existed for some time past, the general depres-
sion, the price of crude, the overproduction throughout the
United States, and particularly in the Kevin field where the
pipe-line was closed down early last fall and no market for
crude, it was decided that fair development would be con-
sidered three wells to be drilled under the 50–50 contract by
June 4, 1925, including the one already completed on the
Stewart lease; the modification or extension to further pro-
vide for the development work after June 4, 1925, to the ex-
tent that all necessary offset wells should be drilled on acre-
age covered by the contract and other operations carried on
with reasonable diligence;  *  *  *  whereupon the trustees
were authorized, empowered and directed to execute such

modification and extension of the 50-50 working agreement with the Campbell Oil Company.''

Harvey testified that he was in Great Falls at the time mentioned in these minutes, and while he had informal conferences with Campbell and Springmyer concerning the affairs of the syndicate in general and with reference to the Campbell Oil Company drilling agreement in particular, there was no regular meeting of the trustees, but different ones expressed their views about extending this drilling agreement, and although no motion was made, resolution offered, or vote taken on any proposition, he understood that the trustees would authorize an extension of the drilling agreement if the remaining trustees saw fit. Harvey was then on his way to Washington, D. C., and it is apparent that no final action upon the matters under consideration was taken prior to his departure from Great Falls, and that the minutes of the meeting containing the above recitals were prepared after he had left. But even though Harvey was present at that meeting, he was the only one of the three trustees who was legally qualified to participate in any action relative to an extension or other modification of the drilling agreement with the Campbell Oil Company, for the reason that Trustees Campbell and Springmyer were, respectively, the president and secretary of that corporation. The same rules which precluded Campbell from participating in a ratification of the original contract at the meeting of June 4, 1923, disqualified both Campbell and Springmyer from participating in this meeting, so far as its action had to do with the Campbell Oil Company drilling agreement. And if Harvey was present and did participate in these proceedings, they amounted to nothing more than an approval of the extension and modification by him alone.

Whether the proceedings taken at the meetings of the trustees of the syndicate held on June 4, 1923, and April 12, 1924, be considered as void or only voidable, is immaterial, for the result would be the same in either event.

We have heretofore adverted to the fact that the approval of the original drilling agreement on June 4, 1923, was secured at a meeting of the trustees participated in by Campbell whose vote was necessary for that purpose, and that by this agreement the syndicate surrendered all of its leasehold interests to a company absolutely controlled by Campbell and which was not financially in a condition to comply with the terms of the agreement and had no intention of doing so at the time. If the oil company had possessed the financial ability to carry out the terms of the original drilling agreement and had in good faith done so, a different situation would be presented; but under the circumstances disclosed in the record, it could not be said that the syndicate received a valuable consideration for the drilling agreement of June 4, 1923, or that Campbell acted in good faith in securing its approval at the meeting.

Lack of good faith and want of consideration are manifest in the extension agreement of April 12, 1924. Under the agreement of June 4, 1923, the company had agreed to drill ten wells within a period of one year, provided the first well drilled was a commercial well, and it also agreed after the expiration of the first year to continue development of the leasehold acreage by keeping at least two strings of tools working continuously and without interruption in the drilling of additional wells.

Under the modification of April 12, the trustees of the syndicate, with the aid of the vote of Springmyer and Campbell, two of the trustees of the oil company, resolved that fair development of the acreage would be considered three wells drilled by June 4, 1925, and the provision for development after the expiration of the first year, which was embraced in the sixth paragraph of the original agreement, was modified by eliminating the requirement that two strings of tools be kept continuously at work in the development of the land after the expiration of the first year, and substituting a provision that after the expiration of two years the oil company

should "continue the development of said acreage with reasonable diligence, save and except when prevented by the elements, strikes or other causes beyond the control of said first party [the oil company] until said lands had been fully developed, taking into consideration at all times market conditions, price of crude, and all other conditions that enter into the development of oil lands and the production of crude oil." It is manifest that this modification and extension of the original agreement operated to the advantage of the defendants Campbell and the Campbell Oil Company, and since the affirmative action of Trustees Campbell and Springmyer was required to bring it about, and both were officers of the oil company whose interests were adverse to those of the syndicate, it will be presumed that the same was entered into without sufficient consideration and through undue influence, under the provisions of section 7895, Rev. Codes 1921, which reads as follows: "All transactions between a trustee and his beneficiary during the existence of the trust, or while the influence acquired by the trustee remains, by which he obtains any advantage from his beneficiary, are presumed to be entered into by the latter without sufficient consideration, and under undue influence."

Defendants complain of the action of the court in refusing to admit in evidence their proposed exhibits 22 to 30, inclusive. These were all letters written by defendant Campbell, and an examination of them fails to disclose that they contain any information which would be of assistance to the court in determining the issues presented. We think they were all properly excluded on the ground that they were self-serving declarations.

Finally, it is claimed that the plaintiffs were guilty of laches in the commencement of this suit and by their delay have estopped themselves from maintaining it.

The question of laches is addressed to the sound legal discretion of the chancellor, and his decision will not be disturbed on appeal unless it is so clearly wrong as to amount to an abuse of discretion. (21 C. J. 218.)

Under the provisions of the declaration of trust, it was the [5] duty of the trustees to protect the interests of the unit holders. After August 6, 1923, and down to January 5, 1925, Springmyer and Campbell, two of the very persons whose wrongful acts constitute the basis of this action, made up a majority of the board of trustees of the syndicate. The doctrine of laches has no application when the ones upon whom the duty of prosecuting the action devolves were themselves the wrongdoers. (21 C. J. 238.)

The plaintiffs Williard and Roy were elected as a majority [6] of the board of trustees of the syndicate on January 5, 1925. The record does not show when the original complaint was filed, but the amended complaint upon which the action was tried was filed February 4, 1925, less than one month after their election as trustees. Prior to this election the relation of Williard and Roy to the syndicate had been merely that of unit holders. It is disclosed by the record that they did have knowledge of some of the acts complained of for a considerable period of time before their election. It is also shown that Williard had been persistent in his efforts to right the wrongs complained of by seeking the appointment of a receiver for the trust estate and in trying to ascertain the situation with reference to the syndicate's affairs, and to these efforts had devoted about two and a half years of his time in writing letters and making appeals to the unit holders to select a board of trustees that would displace Campbell and those under his control, which efforts culminated in success at the meeting of ·January 5, 1925.

This suit was brought by the plaintiffs as trustees for some 2,600 unit holders. It is not claimed that any of the other unit holders had notice or knowledge of the defendants' wrongful acts in entering into the agreements heretofore discussed. Even if laches could be imputed to the individuals Williard and Roy, as unit holders in the syndicate, it ought not to be allowed as a defense to an action brought by them in their representative capacity. To allow such a defense would be to impose a penalty upon the balance of the 2,600 unit holders because of conduct for which they were in no way responsible.

To hold otherwise would mean that the success of this suit to recover trust property would depend not upon the merits of the suit, but upon the accident of the persons selected by the unit holders as their trustees and who were specifically directed to prosecute this action. In other words, if A. and B., who knew nothing about the syndicate's affairs, had been selected as trustees, they could successfully maintain this action and protect the interest of the unit holders, but because Williard and Roy, who in their capacity as unit holders are alleged to have known something about the syndicate's affairs, were selected, the action must fall. This would lead to the result that the action would be successful or be defeated for reasons entirely aside from the merits of the case. We think the court did not err in holding that the defense of laches was not available regardless of the alleged neglect of Williard and Roy to institute an earlier proceeding in their capacity as unit holders. (21 C. J. 238.)

When contention is made on an appeal in an equity case [7] that the evidence is insufficient to support the findings of the trial court, they will not be disturbed by this court unless there is a decided preponderance against them. (*Nolan* v. *Benninghoff*, 64 Mont. 68, 208 Pac. 905; *Thomas* v. *Standard Dev. Co.*, 70 Mont. 156, 224 Pac. 870.)

Upon a review of the whole case, it is clear to us that the findings and conclusions of the court were fully justified by the evidence introduced, and that this court would not be warranted in disturbing them.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY and MATTHEWS concur.